**IN THE COURT OF APPEALS OF IOWA**

No. 19-1783
Filed March 4, 2020

**IN THE INTEREST OF E.P.,**
**Minor Child,**

**E.P., Mother,**
      Appellant.

_____


      Appeal from the Iowa District Court for Fayette County, Linnea M.N. Nicol,

District Associate Judge.


      A mother appeals the termination of her parental rights to her minor child

under Iowa Code chapter 232 (2019).  **AFFIRMED.**


      Cory R. Gonzales of Law Office of Cory R. Gonzales PLLC, Strawberry

Point, for appellant mother.

      Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

      Andrew Thalacker of Juvenile Public Defender's Office, Waterloo, attorney

and guardian ad litem for minor child.


      Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

A mother appeals the termination of her parental rights to her minor child under Iowa Code chapter 232 (2019).[1]  On appeal, the mother argues the State failed to prove grounds for termination, she was not provided sufficient reunification services, an exception should be applied to prevent termination, and she should have been granted a six-month extension to regain custody of the child.  We disagree and affirm.

### I.  Background Facts and Proceedings.

E.P. is the mother of Ev.P., born in 2016.  In October 2018, the child was removed from the mother's care after the mother's arrest for possession of methamphetamine.  This incident led to a founded child abuse assessment against the mother.  The mother admitted to using methamphetamine daily in the three or four days before the child's removal, and a drug test confirmed the child had methamphetamine in her system.  At the time, the mother did not have a job or stable housing.  After being placed briefly with family members, the child was moved to foster care.  The foster care parents continue to care for the child, who arrived with significant behavioral delays.  The child is now thriving.

The Iowa Department of Human Services (DHS) created a case permanency plan requiring the mother to participate in services, including Family Safety, Risk, and Permanency (FSRP) services, mental-health and substance-

---

[1] At the time of the termination hearing, the father's whereabouts were unknown, but there was credible information that he had returned to Mexico.  His parental rights were terminated.  He does not appeal.

abuse evaluations and any recommended treatment, and random drug screens. The plan offered visits between the mother and child three times per week.

The mother completed a mental-health and substance-abuse evaluation, but she only attended two other appointments throughout this case. She has not participated in any drug testing, although she was set to test twice per month.

She attended visits without issue for the first few months. To the mother's credit, she appropriately cared for the child during these visits and the child was always happy to see her. But over time the mother began to confirm her visitation times inconsistently and had several no-shows. These no-shows caused significant distress to the child. The mother would also "fall off the radar" for periods of time and have no contact with the child. The FSRP worker tried to accommodate the mother by changing the visits from three, two-hour visits per week to two, three-hour visits. Still, the mother continued to miss visits. She never requested more visits or progressed beyond supervised visits.

Throughout this case, the mother has depended on others for transportation. Both the DHS and FSRP workers discussed the mother's options with her and offered to provide her and the child with transportation or to provide gas cards to anyone who gave the mother a ride. Several times, however, a worker would transport the child to the visit location—at one time over an hour from the child's foster placement—and the mother would not show up, often without explanation. At a family team meeting in August 2019, after several no-shows, the mother was encouraged to find her own transportation to visits but was also told that DHS could provide gas cards. The mother did not request more assistance with transportation.

The child was adjudicated a child in need of assistance in December 2018. The juvenile court held a dispositional hearing in February 2019 and directed the mother to continue to comply with the DHS permanency plan. After a permanency hearing in May, the court ordered the State to proceed with termination.

The State filed a termination petition, and the district court held a termination hearing in October. At the time of the termination hearing, the mother still did not have stable housing or employment. Between February and November 2019, the mother had reported moving to seven residences, almost all in different towns. The mother claimed she was sober, but she had not completed substance-abuse treatment or participated in any drug testing. She was not participating in mental-health treatment. She failed to communicate with her DHS and FSRP workers for long stretches of time, and the FSRP worker was concerned that the mother's failure to communicate may have been substance-abuse related. Both the DHS and FSRP workers testified they would not be comfortable returning the child to the mother or giving the mother additional time to work toward reunification.

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e) and (h). The court concluded DHS had made reasonable efforts toward reunification, declined to apply a permissive exception to termination, and declined to grant a six-month extension. The mother appeals.

## II. Standard of Review.

We review termination of parental rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). We give weight to, but are not bound by, the juvenile court's factual findings. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). Our primary concern is the best interests of the child. *Id.*

**III.  Analysis.**

On appeal, the mother argues (A) the State failed to prove the statutory grounds for termination; (B) DHS failed to make reasonable efforts toward reunification; (C) the court should have applied a permissive exception to termination based on the closeness of the parent-child relationship; and (D) the court should have granted her a six-month extension to reunify with the child.

**A.  Grounds for Termination.**  The mother argues the State failed to prove grounds for termination under section 232.116(1)(e) or (h).  "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence."  *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

As for section 232.116(1)(h),[2] the mother only challenges the final element—that the child could not be returned to her custody at the time of the termination hearing.  The mother claims that because no issues arose when caring for her daughter at visitations and no one proved she is using drugs, the State failed to show by clear and convincing evidence that the child could not be returned to her care at the time of the termination hearing.

---

[2] Iowa Code section 232.116(1)(h) provides that termination is appropriate if,
    h.  The court finds that all of the following have occurred:
        (1) The child is three years of age or younger.
        (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
        (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
        (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Meeting the case plan terms offers a parent an opportunity to show his or her stability. Here the mother used few services and met few conditions. She frames her lack of participation in substance-abuse and mental-health services and her failure to participate in any drug testing as evidence that she is sober and stable enough to regain custody of her child. Yet, the plan called for participation in drug testing and substance-abuse treatment. The mother avoided drug testing. Likewise the FSRP worker offered to help the mother get to the drug testing facility, yet the mother failed to undergo testing. The FSRP worker worried that the mother's habit of "going off the radar" for weeks at a time was a warning sign of continued drug use.[3] Coupled with the concerns about the mother's sobriety, at the time of the termination hearing, it was unclear where the mother was living and whether she had a job. In addition, although the mother appropriately cared for the child at visits, she infrequently attended these visits and had not participated consistently enough to progress beyond supervised visits. For all of these reasons, the State proved by clear and convincing evidence that the mother could not regain custody of the child at the time of the termination hearing. *See In re A.M.*, 843 N.W2d 100, 111 (Iowa 2014).

**B. Reasonable Efforts.** At the termination hearing, the mother argued for the first time that DHS did not provide her with adequate access to transportation and therefore did not make reasonable efforts to reunify her with the child. *See In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) ("The State must show reasonable

---

[3] The mother went weeks without responding to text messages or phone calls designed to arrange contact with her child. The visitations were sporadic, even when the FSRP worker provided transportation.

efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." (quoting *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (en banc))). "[T]he State has the obligation to provide reasonable reunification services," but the parent "had the obligation to demand other, different, or additional services *prior* to the termination hearing." *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (emphasis added). "Where a parent 'fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding.'" *In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) (quoting *In re M.Y.R.*, No. 11-1139, 2011 WL 5389436, at *7 (Iowa Ct. App. Nov. 9, 2011)).

Transportation has been an issue for the mother throughout this case but she raised no concerns about the transportation provided to her until the termination hearing. For that reason, she has waived this issue on appeal. The mother attempts to avoid the waiver issue by referencing an August 2019 text exchange with the FSRP worker where she asked when transportation would be provided again and if there was a certain distance limit on the worker providing transportation. The mother did not request other, different, or additional services in her text messages, and raised no concerns with the juvenile court. This text exchange does not satisfy the mother's burden to request services prior to the termination hearing.

**C. Permissive Exception to Termination.** The mother argues the court should have applied the permissive exception to prevent termination based on the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c). These factors "are permissive, not mandatory." *A.M.*, 843 N.W.2d at 113 (quoting *In re*

*D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)). "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs." *D.W.*, 791 N.W.2d at 709.

While we acknowledge the child is bonded to and loves the mother,[4] we cannot agree that the disadvantages of termination outweigh the mother's inability to provide for the child's needs. Together with the mother's housing instability and unemployment, she inconsistently participated in visitation, often going stretches of time without seeing the child. The mother points to the child's distress when the mother no-showed for visits as evidence that they share a close bond that should prevent termination. Throughout this case, however, the mother has failed to take responsibility for and remedy her lack of stability and follow-through that caused the child's distress. By all accounts, the child is thriving in her foster placement. She has developed close bonds with her foster family and they have given her the stability she needs. We find the permissive exception to termination in section 232.116(3)(c) inapplicable here.

**D. Six-Month Extension.** For the court to provide additional time for reunification, it must determine that the need for removal "will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b); *accord T.S.*, 868 N.W.2d at 442 ("Simply put, a parent must *do* something, must make some effort to move; neither standing still nor cruise control on a status-quo path will defeat an impending termination."). Here, the mother had almost one year to

---

[4] The mother-child bond was described as "warm" at the termination hearing, however the foster parents are filling the parental role for the child.

correct the issues that caused DHS's involvement with the family and failed to do so.  We agree with the juvenile court's denial of a six-month extension.

**IV.  Disposition.**

For these reasons, we affirm the juvenile court's termination of the mother's parental rights.

**AFFIRMED.**